ELLIS, Judge.
This suit was filed by Samuel Louis as head and master of the community, seeking reimbursement for medical expenses, loss of clothing, wages and other items of his wife, Mathilda Francis Louis, and by the latter individually for damages because of injuries suffered in an accident when the car in which she was riding crashed into the caboose of a train at a crossing on the outskirts of Breaux Bridge, Louisiana, on November 28, 1953, at or about eight or nine o’clock p. m.
Before the case was tried, Samuel Louis died and no one was substituted in his place as plaintiff.
Suit was filed on July 9, 1954, the case tried November 27, 1956, but was not submitted to the district court for judgment until September of 1958, and was decided on October 30, 1958, with written reasons against the plaintiff and in favor of the defendant rejecting the plaintiff’s demands and dismissing her suit. Formal judgment was signed in open court on Nov. 12, 1958, and on Nov. 10, 1959, or two days less than *874 one year from the date of the judgment, plaintiff moved for a devolutive appeal to this court.
On Nov. 28, 1953, Mathilda Louis, a cousin, and her brother Bernard Francis, who was driving Mathilda’s 1953 Oldsmobile, left her home in Lafayette, La., to go to Breaux Bridge to pick up the wife of Bernard Francis. Mathilda had purchased this Oldsmobile approximately two weeks prior to this date, and due to an automatic shift with which she was unfamiliar, although she had owned a 1947 Chevrolet and knew how to drive that, she was unable to operate the Oldsmobile.
Bernard Francis lived in Houston, Texas and he and his wife were on a visit to Mathilda’s. Following Mathilda’s Oldsmobile was the car belonging to Bernard Francis and which was being driven by his nephew, Patrick Francis, who was accompanied by his wife on the front seat and a man named Oscar Pete and his girl friend. Plaintiff was sitting in the middle with her cousin, who at the time of the trial was living in Beaumont or Orange, Texas, on the outside of the front seat. Neither Oscar Pete nor his girl friend testified in the case.
The plaintiff’s version is that she left in her car from her home, being driven by her brother Bernard Francis, and that while in the city of Lafayette she looked at the speedometer and he was going approximately 35 miles an hour; that she did not look at it again but that thereafter he did not go “too fast;” that the weather was rather cloudy and rain was falling and the highway was damp; that when they got within approximately 100 feet from the train on the outskirts of Breaux Bridge, she saw it and “hollered,” and that her brother tried not to hit the train by applying the brakes and turning the car so that it would not hit the train, but that the rear part of the car struck the train first and Bernard Francis was killed in the wreck. Plaintiff further testified that the car being driven by Patrick Francis was following close behind them just prior to the collision and she never remembered passing any automobile before running into the train.
Patrick Francis, who was driving the following automobile, also testified, however, a mere reading of his entire testimony convinces us, as it must have the District Court, that it was in complete conflict with material testimony which was proven by a preponderance of the evidence. He did testify that he was following the plaintiff’s automobile and traveling approximately 50 or 55 miles an hour, and that he was following about 50 feet behind the Oldsmobile at the time the accident happened, however, he brought his car to a stop before reaching the railroad track. This witness also denied having seen any other car just before the wreck.
On the other hand it is definitely proven that just prior to the accident an engine, with its front end attached to the front end of a caboose, and a two hundred candle power light on its rear end, was backing up pulling this caboose, and prior to reaching the crossing the crew testified that the bell was rung and the whistle blown according to the rules and requirements, which would be more than once, and as to the blowing of the whistle, they were corroborated by disinterested parties. Despite these warnings, the engineer on the train testified that when the engine had gotten to the crossing he saw an automobile approximately 500 feet away, approaching the crossing, and another automobile which turned out to be the plaintiff’s came from its rear and passed it, traveling at a very high rate of speed. The engineer thought he would be able to get the engine and caboose over the crossing before it was struck as he saw the driver almost immediately after passing the car pull to his left and off of the highway. Another member of the train crew, the conductor, testified that the train was approaching the crossing at approximately ten miles an hour and blew its whistle the first time at about 200 yards away; that the crossing signal, de *875 scribed as four blasts of the whistle, sounded the crossing signal twice, and stated that he would not know if the bell on the engine was ringing. He did not see the crash.
The fireman on the locomotive testified that it was traveling approximately 15 miles per hour and that as they approached the crossing, the whistle was sounded and the bell was rung at least a quarter of a mile away, and that these signals were given continuously until the engine occupied the crossing. It was this witness’s observation that just previous to the engine going into the crossing he saw a car approximately 300 feet or more away, and that about that time the car came from behind the first car and passed it at a speed, in his opinion, of sixty or better, and he then heard brakes “squeeking.” These train crew witnesses are to be considered as disinterested as there is no suit against the railroad nor any intimation that they were negligent in any manner.
Just prior to the accident, a car being driven by a Mr. Price, who was District Land Man for the Crown Central Petroleum Corporation, with W. P. Valentine, a tool pusher for Fatjo Drilling Company at that time, riding on the right front seat and Eugene Cortinas, a petroleum geologist, riding on the left side in the rear seat, and Omer O. Taylor, production and drilling superintendent for the Crown Central Petroleum Corporation, riding on the right of the rear seat, was proceeding toward Breaux Bridge, La., as the occupants intended to get some coffee there. Price testified that when his car had reached about ninety to one hundred feet south of the track and was going between forty-five and fifty miles an hour, an automobile with a Texas tag first passed him at a speed which he estimated “in between eighty to eighty-five and possibly ninety miles an hour”, and as he had his bright lights on he saw a Texas tag and, also, at that time could see the blinker lights on the right side of the highway across the railroad track on which it says “Breaux Bridge City Limits”. The second car passed Price “several seconds later and almost scraped the left side of my car.” Price is positive in his testimony that the first car cleared the track in front of the engine, which would be the one with the Texas tag belonging to Bernard Francis, the driver of the plaintiffs’ car, and who himself lived in Houston, Texas. There was no doubt in this witness’s mind that the car with the Texas license crossed the track first. Price stated that when the second car got within approximately forty yards of the crossing the brakes were applied and it went to swerving from one side of the road to the other and finally went to the left and went partially into the ditch and onto the shoulder of the road and up the embankment of the railroad and struck the right rear end of the caboose and hurtled through the air at a height of approximately five to six feet and turned over “about two or three times.”' Price continued down the highway and! across the railroad track and stopped on the shoulder of the highway on the right hand side. He saw the Oldsmobile lying approximately thirty to forty feet north of the railroad tracks. As he stopped the car with the Texas license backed down the highway and he saw “a Negro man and either one or two Negro women get out of the car and the Negro man was in the driver’s seat.”
While the estimates as to the distances varied and it must be remembered in this connection that this case was tried long after the accident occurred, in the main the occupants of the Price car were all agreed that the plaintiff’s car was being driven at a very fast rate of speed, and the lower estimate was “a possible but not probable” speed of sixty-five miles an hour. The witness who made this estimate under cross examination stated that he thought it was going eighty miles an hour but could possibly be wrong either way by ten or fifteen miles an hour.
The physical facts show that the automobile skidded a measured distance by the *876 highway trooper of 165 feet to where it struck the caboose and then was lying with its front end 20 feet north of the track. After striking the caboose it had completely cleared the track. These skid marks show that it had skidded at an angle, somewhat sideways, before the rear end of the car struck the right rear end of the caboose.
In addition the defendant produced disinterested witnesses who, because of their work or living nearby or at the time being in the vicinity of the railroad crossing, positively heard the blowing of the whistle of the train as it approached the crossing.
It is argued by counsel for plaintiff that whether her recovery is barred herein is determined by her status as a passenger, not as an owner nor as a principal, and he cites Rodriguez v. State Farm Mutual Insurance Co., La.App.1955, 88 So.2d 432. While the court in the cited case clearly recognized a distinction between the duty of a guest passenger and an owner-passenger, it is immaterial in a decision of this case, for under either yardstick as applied to the facts of this case, plaintiff would be barred from recovery by her contributory and/or independent negligence. Where an automobile is being driven at a speed estimated at 75 to 90 miles per hour on a dark night, with a wet pavement, without any protest of a plaintiff, either as an ordinary passenger or as an owner-passenger, and such excessive speed contributed to the accident, plaintiff is barred from recovery. The only protest or warning made by plaintiff was not as to the speed or manner or method in which the automobile was being driven, but after passing the Price car she saw the train and screamed, but it was much too late.
For the reasons assigned, the judgment of the District Court is affirmed.
Affirmed.